IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CATHERINE McLAUGHLIN; ROBERT JACOB; CHELSEA STEALS; JANICE BOYER; and LOUISE YOUNT, | : : : : : |
| Plaintiffs, | : : |
| v. | : Civil Action No. _____ |
| BOROUGH OF CONWAY, PENNSYLVANIA, | : : : : |
| Defendant. | : : |

## **COMPLAINT**

## I.    **Introduction**

1.    Plaintiffs, residents of the Borough of Conway who have disabilities that substantially limit their ability to walk, bring this lawsuit to challenge the Borough's refusal to permit residents with mobility disabilities to secure designated, reserved, accessible parking spaces near their homes and its planned removal of the reserved, accessible parking spaces it had previously authorized for Plaintiffs.

2.    Absent designated parking spaces reserved for people with disabilities on the street in front of their homes, Plaintiffs cannot

meaningfully enjoy the benefits of the Borough's on-street parking program and services due to their limited ability to walk.

3.    The Borough of Conway's policies and practices that foreclose the Plaintiffs from securing and maintaining designated, reserved, accessible parking space for persons with disabilities near their homes violate Title II of the Americans with Disabilities Act ("ADA").

4.    Plaintiffs seek appropriate declaratory and injunctive relief to end Defendant's violations of the ADA.

## II.   Jurisdiction and Venue

5.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

6.    Plaintiffs' claims are authorized by 42 U.S.C. §§ 1983 and 12133 and 28 U.S.C. §§ 2201 and 2202.

7.    Venue is appropriate in this district pursuant to 28 U.S.C. §§ 1391(b)-(c) since Defendant operates and performs its official duties in this district and because all of the events that gave rise to this Complaint occurred in this district.

## III.   Parties

8.    Plaintiff Catherine McLaughlin is a 64-year-old resident of the Borough of Conway, Pennsylvania.

9.      Plaintiff Robert Jacob is a 73-year-old resident of the Borough of Conway, Pennsylvania.

10.     Plaintiff Chelsea Steals is a 44-year-old resident of the Borough of Conway, Pennsylvania.

11.     Plaintiff Janice Boyer is a 60-year-old resident of the Borough of Conway, Pennsylvania.

12.     Plaintiff Louise Yount is a 70-year-old resident of the Borough of Conway, Pennsylvania.

13.     Defendant Borough of Conway ("Conway" or "the Borough") is a political subdivision of the Commonwealth of Pennsylvania located in Beaver County, Pennsylvania.

## IV.    Factual Background

### A.    Plaintiffs' Need for Designated, Reserved Accessible Parking Spaces

#### 1.    Plaintiff Catherine McLaughlin

14.     Plaintiff Catherine McLaughlin has lymphedema, a disorder that results in swelling of her legs due to a blockage in her lymphatic system, and diabetes, which causes poor circulation in her legs affecting her circulatory and endocrine systems.

15.     Ms. McLaughlin's lymphedema substantially limits her ability to walk.  Ms. McLaughlin must use a cane to walk safely and, even with a

cane, she experiences pain and exacerbation of her edema when walking any distance at all, and she cannot walk more than approximately 10-15 feet without stopping to rest.  She also has substantial difficulty walking any distance on slopes or uneven terrain and climbing stairs.

16.    Due to her disability, Ms. McLaughlin applied to the Pennsylvania Department of Transportation (PennDOT) to secure a person with a disability parking placard.  PennDOT granted her request and issued her a person with a disability parking placard in approximately August or September of 2008.

17.    Ms. McLaughlin has a car, which she uses approximately once daily to travel to medical appointments, the grocery store, church, family functions, and generally participate in community life.  Ms. McLaughlin also uses her car to transport her husband, who has an illness, to medical appointments or the hospital.

18.    Ms. McLaughlin lives in a single-family house on 4th Avenue in Conway.  She has lived there for 42 years and wants to continue to live there.

19.    The Borough permits on-street public parking along the same side of the street where Ms. McLaughlin lives, but, in the absence of

designated parking spaces, parking is available on a first-come, first-served basis.

20.    Ms. McLaughlin's home has a garage, but to access it she must walk down the sidewalk leading to 10 steep steps at the rear of her home, a distance of approximately 150 feet on sloping and uneven terrain.  Due to her disability and the distance between her house and the garage, it would take her about 15 to 20 minutes to reach her car if she parked there. Traveling to the garage from her home causes Ms. McLaughlin severe pain and exacerbates her edema.

21.    Ms. McLaughlin must only walk approximately 10 feet from her front door and then up four steps to reach the parking space in front of her house, which is shorter and less challenging than walking to her garage and causes her much less pain.

22.    If Ms. McLaughlin parks in front of her house, she can reach her car with much less pain and difficulty than if she parks in her garage.

23.    Without a designated, reserved, accessible parking space, Ms. McLaughlin might not be able to park in front of her home, requiring her to walk a longer distance with more steps in order to reach her car.  A designated parking space in front of her home lessens Ms. McLaughlin's pain associated with her disability, limits exacerbation of her edema that

she experiences when she walks, and is a safer distance for her to traverse and, concomitantly, facilitates her ability to travel independently and access the community.

### 2. Plaintiff Robert Jacob

24.    Plaintiff Robert Jacob has venous stasis, diabetes, and ulcers, impairments that substantially limit his ability to walk.

25.    In order to safely ambulate, Reverend Jacob uses a cane and has used a wheelchair in the past.  Reverend Jacob's doctor advised him that a fall could be deadly for him, so he uses care in walking, avoiding steep grades and stairs whenever possible.

26.    Reverend Jacob's disabilities cause swelling in his ankles and feet and pain that can be so severe it often keeps him from sleeping.

27.    Due to his disabilities, Reverend Jacob applied to PennDOT to secure a person with a disability parking placard in 2007.  PennDOT granted his request in 2007 and he received and still has a person with a disability parking placard.

28.    Reverend Jacob has a car, which he uses for transportation to and from medical appointments and for community activities.

29.    Reverend Jacob lives in a home he owns on 4th Avenue in Conway.  He has lived there since 1991.

30.    Due to his disabilities, Reverend Jacob had a ramp with a handrail installed to allow safe access from his front door to the street in front of his home.

31.    If Reverend Jacob is not able to park in front of his home, he must walk down a steep hill or traverse broken sidewalks for a long distance to access other parking.

32.    The Borough permits on-street public parking along the same side of the street where Reverend Jacob lives.  Parking on his street is used by residents as well as their guests and visitors to local sporting events.

33.    In the absence of a designated, reserved, accessible parking space Reverend Jacob risks not being able to park close enough to his home to use his car since parking on his street is permitted on a first-come, first-served basis and he has difficulty walking without risk of falling.

### 3.    **Plaintiff Chelsea Steals**

34.    Plaintiff Chelsea Steals has fibromyalgia, degenerative disc disease, and arthritis.

35.    Plaintiff Steals' disabilities substantially limit her ability to walk. Ms. Steals cannot walk without experiencing severe pain and, as a result, limits her walking.  At work, for instance, she remains mostly seated at her

desk and aggregates any tasks that require walking so she can complete them all at once.

36.    Due to her disability, Ms. Steals applied to PennDOT to secure a person with a disability parking placard.  PennDOT granted her request and issued her a person with a disability parking placard several years ago.

37.    Ms. Steals has a car, which she uses on weekdays to travel to and from work as well as for medical appointments, grocery shopping, and community activities.

38.    Ms. Steals lives in a house on 4th Avenue in Conway.  She has lived there for approximately 10 years.

39.    The Borough permits on-street public parking along the same side of the street where Ms. Steals lives, but, in the absence of designated parking spaces, parking is available on a first-come, first-served basis.

40.    Ms. Steals' home has a detached garage, but it is located behind her home and down a steep incline which is very difficult for her to safely reach without enduring substantial pain.

41.    If Ms. Steals is able to park in front of her home, she can reach her car more easily and with much less difficulty and pain than if she must park in her garage.

42.     Without a designated, reserved, accessible parking space, Ms. Steals might not be able to park in front of her home, requiring her to park her car at a distance that she cannot safely reach without difficulty and pain.

### 4.     Plaintiff Janice Boyer

43.     Plaintiff Janice Boyer has stenosis and arthritis of her back and spine, arthritis in both knees necessitating replacement of her right knee and limiting use of both, arthritis in her hips, and a history of herniated discs in her neck requiring surgery and limiting how much she can turn her head.

44.     Ms. Boyer's impairments substantially limit her ability to walk. She must sometimes use a cane to walk.  Even with a cane, she has great difficulty walking any distance over slopes and uneven terrain and walking long distances over a flat, smooth surface.  When she must walk on a slope, she experiences pain and swelling that can last for hours and she is at risk of falling.

45.     Due to her disabilities, Ms. Boyer applied to PennDOT to secure a person with a disability parking license plate for her car and a person with a disability parking placard for her SUV.  PennDOT granted those requests in or around March 2006.

9

46.    Ms. Boyer uses her SUV most of the time, rather than her car, because it is easier for her to enter and exit.  She uses her vehicle to commute to work on weekdays as well as for errands and other community activities.

47.    Ms. Boyer lives in a single-family home on 4th Avenue in Conway.  She has lived there for 27 years.

48.    The Borough permits on-street public parking along the street in front of Ms. Boyer's home, but, in the absence of a designated parking space, parking is available on a first-come, first-served basis.

49.    Ms. Boyer's house has an old garage in the back that is not big enough to park her SUV and a grassy area near the garage that would require costly modifications to use as a regular parking area.  Moreover, to access the garage or grassy area would require Ms. Boyer to walk a distance of approximately 150 feet down two steep grades with no sidewalk or railing.  Ms. Boyer would experience severe pain and swelling and risk falling if she had to use the garage or grassy area to park her vehicle.

50.    Ms. Boyer must only walk about 35 feet on paved, level ground and up three steps to reach the parking space in front of her house, which she can do with much less pain, difficulty, and risk than if she had to park in the garage or grassy area at the back of her house.

10

51.    Without a designated, reserved, accessible parking space, Ms. Boyer might not be able to park in front of her home, requiring her to walk long distances over uneven terrain, endure pain and swelling, and risk falling to get to and from her vehicle to travel to work and elsewhere and participate in community life.

### 5.    Plaintiff Louise Yount

52.    Plaintiff Louise Yount has chronic back pain, sciatica, spinal stenosis, neuropathy of her right foot, nerve damage, and a history of herniated discs and dislocation of her sacroiliac joint.

53.    Ms. Yount's disabilities substantially limit her ability to walk. She must use a cane to walk.  Even using a cane, walking exacerbates her pain, sometimes to the point where she must stop and sit or lie down.  Due to her disabilities, Ms. Yount lacks sensation in her foot requiring her to use great care when she walks so that she does not stumble.  In addition, her nerve damage causes her to experience urinary incontinence when her back pain is exacerbated by, for instance, walking.

54.    Due to her disability, Ms. Yount applied to PennDOT to secure a person with a disability parking placard in or around 2009 or 2011. PennDOT granted her request shortly thereafter and issued her a person with a disability parking placard.

55.    Ms. Yount has a car, which she uses several times weekly to travel to medical appointments, shop, attend church, and generally participate in community life.  Ms. Yount also uses her car to transport her husband and her 94-year-old mother, who lives with her and her husband and does not drive.  Both Ms. Yount's husband and mother have mobility disabilities and have received PennDOT parking placards for people with disabilities.

56.    Ms. Yount lives in a single-family house on 2nd Avenue in Conway.  She has lived there for 69 years, nearly her entire life.

57.    The Borough permits parking on one side of the street where Ms. Yount lives, but, in the absence of designated parking spaces, parking is available on a first-come, first-served basis.

58.    Patrons of businesses on Ms. Yount's street use parking spaces as do residents and their guests.

59.    Ms. Yount's home does not have any off-street parking.  Even if she could modify her yard so she could park there, it would be too far and the terrain would be uneven to enable her to walk there from her house.

60.    If Ms. Yount parks in front of her house, she must walk only a short distance on a paved sidewalk so she can reach her car with much less pain and difficulty than if she parked elsewhere.

12

61.   Without a designated, reserved, accessible parking space, Ms. Yount might not be able to park in front of her home, resulting in her inability to readily use her car for necessary travel so that she, her husband, and her mother would be confined more in their home.  In those instances when using the car for travel is essential for Ms. Yount or her family, she would have to endure significant pain to access it if she parked farther away.

### B.   The Borough's Streets and Parking Policies, Practices, and Procedures

62.   The Borough owns and controls public streets within its boundaries, including the streets in front of the Plaintiffs' homes.

63.   The Borough has enacted ordinances governing streets and sidewalks within its jurisdiction, including excavation, maintenance and repair, and sidewalk and curb construction.  Borough of Conway Ordinances, Ch. 104, 118.

64.   The Borough has enacted ordinances governing streets and parking on streets within its jurisdiction and enforces those ordinances. Borough of Conway Ordinances, Ch. 118.

65.   Unless parking spaces are otherwise designated, the Borough's policy and practice is to permit parking on residential streets on a first-come, first-served basis.

13

66.    In 2011, the Borough adopted Ordinance 537 creating a process by which residents could apply for and, if eligible for, secure "restricted handicapped residential parking" permits.  Borough of Conway Ordinances § 118-19.1.

a.    Under Ordinance 537, any Borough resident who had been issued a disability license plate or placard by PennDOT designating the individual as a person or veteran with a disability would be eligible for the installation in front of the person's residence a sign indicating that parking in such space is restricted to vehicles bearing license plates or placards for people with disabilities or severely disabled veterans.  *Id.* § 118-19.1.A.

b.    A person who desired a designated, reserved, accessible parking space under Ordinance 537 was required to submit an application to the Chief of Police of Conway.  *Id.* § 118-19.1.A.  The Ordinance identified various factors that the Chief of Police was to consider in assessing an application for a restricted parking permit, including:  impact on general safety; impact on traffic flow; impact on neighboring properties; the nature of the applicant's disability; and the availability to the applicant of off-street, garage, or driveway parking.  *Id.* § 118-19.1.C.

14

c.   Ordinance 537 provided that a restricted parking permit was valid for 12 months, but could be renewed with submission of documentation by the applicant's treating physician of his/her continuing disability, the applicant's continued use of the vehicle, and the applicant's ongoing residence at the same address.  *Id.* § 118-19.1.D.

67.   On December 21, 2016, the Borough enacted Ordinance 556 that repealed Ordinance 537 "in its entirety."

**C.   Defendant's Granting and Subsequent Rescission
of Plaintiffs' Requests for Designated, Reserved,
Accessible Parking Spaces as Reasonable Modifications**

68.   In 2008, several years before the Borough enacted Ordinance 537, Plaintiff McLaughlin requested that the Borough designate a reserved, accessible parking space in front of her home.  At that time, the Borough had no formal process to submit requests, so she verbally asked the Chief of Police to designate the parking space.

69.   In 2008, the Borough granted Ms. McLaughlin's request and installed a sign post to designate that the parking space in front of her home is reserved for vehicles displaying a parking plate or placard for persons with a disabilities or severely disabled veterans.

15

70.    Plaintiff Jacob requested that the Borough provide him with a designated, reserved, accessible parking space in front of his home about 10 years ago.

71.    The Borough granted Reverend Jacob's request and installed a sign post to designate that the parking space in front of his home is reserved for vehicles displaying a parking plate or placard for persons with disabilities or severely disabled veterans.

72.    Several years ago, Plaintiff Steals requested that the Borough provide her with a designated, reserved, accessible parking space in front of her home.

73.    The Borough granted Plaintiff Steals' request and installed a sign post to designate that the parking space in front of her home is reserved for vehicles displaying a parking plate or placard for persons with disabilities or severely disabled veterans.

74.    Due to her disabilities, Plaintiff Boyer requested that the Borough provide her with a designated, reserved, accessible parking space in front of her home in September 2011.

75.    The Borough granted Plaintiff Boyer's request in September 2011, and installed a sign post to designate that the parking space in front

16

of her home is reserved for vehicles displaying a parking plate or placard for persons with disabilities or severely disabled veterans.

76.   Due to her disabilities, Plaintiff Yount requested that Conway Borough provide her with a designated, reserved, accessible parking space in front of her home in or around 2011 or 2012.

77.   The Borough granted Plaintiff Yount's request in or around 2011 or 2012, and installed a sign post to designate that the parking space in front of her home is reserved for vehicles displaying a parking plate or placard for persons with disabilities or severely disabled veterans.

78.   Plaintiffs have complied with any procedures that the Borough has requested to renew and maintain the designated, reserved, accessible parking spaces in front of their homes.

79.   It is Plaintiffs' understanding that the signs designating the parking spaces in front of Plaintiffs' homes as reserved for people with disabilities can be used by any vehicle bearing a license plate or placard for persons with disabilities or severely disabled veterans, but those designated spaces have afforded them more opportunity to have access to on-street parking near their home than they had before the signs were installed and that they would have if the signs are removed.

17

80.    By letter dated January 24, 2017, approximately a month after enactment of Ordinance 556, the Borough informed the Plaintiffs about the enactment of Ordinance 556 repealing Ordinance 537.  The letter advised the Plaintiffs that restricted parking permits that were granted or renewed in 2016 would remain in place until "early April 2017, at which time the signs will be removed and the curbs will be repainted."

81.    After that letter was written, the Borough indicated that it would not remove existing signs designating the restricted accessible residential parking spaces until June 1, 2017.

82.    Plaintiffs' counsel twice wrote to the Borough's Solicitor, advising her that the Borough's policy not to permit residents to seek and secure reasonable modifications in the form of designated, reserved, accessible parking spaces in front of their homes violates Title II of the ADA and asked that the Borough reconsider its policy.  The Borough's Solicitor rejected Plaintiffs' counsel's requests.

83.    Since the Borough installed the signs designating the parking spaces in front of the Plaintiffs' homes as reserved for people with disabilities, Plaintiffs have not received any complaints from neighbors or others.

18

84.     Plaintiffs still need designated, reserved, accessible residential parking spaces in front of their homes due to their disabilities.

85.     According to the Borough's website, there were 2,290 residents living in 988 households based on data from the 2000 Census.

86.     On information and belief, there currently are only 12 designated, reserved, accessible parking spaces in the Borough.

87.     It would not be a fundamental alteration for the Borough to modify its "first-come, first-served" policy for parking on residential streets by providing a designated, reserved, accessible parking space in front of the Plaintiffs' homes designated for use by anyone with a disability or disabled veteran license plate or placard.

88.     Plaintiffs will suffer irreparable harm if the Borough is permitted to rescind the permits that authorize designated, reserved, accessible parking spaces in front of their homes, to remove the signage designating those reserved spaces, and to not continue to afford them reasonable modifications of its first-come, first-served parking policy.

        a.     Without a designated, reserved, accessible parking space, it will be much more difficult and painful for Ms. McLaughlin to park in her garage, which will restrict her ability to travel and keep her more

19

confined at home.  As a result, she would need to consider moving from her home of 42 years to somewhere that she could park more easily.

b.     Without a designated, reserved, accessible parking space, it will be much more difficult for Reverend Jacob to park near his home.  As a result, he will be unable to readily and safely use his car for necessary travel and will be more confined to his home than he currently is.

c.     Without a designated, reserved, accessible parking space, it will be much more difficult for Ms. Steals to park near her home. Ms. Steals must use her car to travel to work and for essential trips, such as doctors' appointments and grocery shopping, so the absence of a designated parking space will mean that she must endure greater pain to use her car for those necessary trips.  Ms. Steals will not be able to readily use her car for anything other than necessary trips, so that she will be more confined in her home than she currently is.

d.     Without a designated, reserved, accessible parking space in front of her home, it will be much more difficult for Plaintiff Boyer to park near her home.  As a result, she will be unable to readily use her vehicle as she does now.  She cannot afford to retire and she needs her vehicle to travel to work, and thus she will have to struggle, endure pain and swelling, and risk falling, simply to reach her vehicle to continue to go to work.

20

e.      Without a designated, reserved, accessible parking space in front of her home, it will be much more difficult for Plaintiff Yount to park near her home.  As a result, she will be unable to use her car for necessary travel.  She, her husband, and her mother will be more confined to their home than they currently are.  In those instances when use of the car is essential for her, her husband, or her mother, Ms. Yount will have to endure significant pain in order to access the car when it is parked farther from her home.

## V.      Claims

89.      Paragraphs 1 through 88 are incorporated by reference.

90.      Plaintiff McLaughlin has lymphedema and diabetes, physical impairments that substantially limit her ability to walk, a major life activity, and her endocrine and lymphatic system, major bodily functions.  Ms. McLaughlin is thus a person with a disability protected by the ADA.  42 U.S.C. §§ 12102(1)(A), 12102(2); 28 C.F.R. § 35.108.

91.      Plaintiff Jacob has venous stasis, diabetes, and ulcers, physical impairments that substantially limit his ability to walk, a major life activity, and his endocrine and circulatory systems, major bodily functions.  Reverend Jacob is thus a person with a disability protected by the ADA.  42 U.S.C. §§ 12102(1)(A), 12102(2); 28 C.F.R. § 35.108.

92.    Plaintiff Steals has fibromyalgia, degenerative disc disease, and arthritis, physical impairments that substantially limit her ability to walk, a major life activity.  42 U.S.C. §§ 12102(1)(A), 12102(2); 28 C.F.R. § 35.108.

93.    Plaintiff Boyer has arthritis in her back, spine, knees, and hips, physical impairments that substantially limit her ability to walk, a major life activity.  42 U.S.C. §§ 12102(1)(A), 12102((2); 28 C.F.R. § 35.108.

94.    Plaintiff Yount has chronic back pain, sciatica, spinal stenosis, neuropathy in her right foot and a history of herniated discs and dislocation of her sacroiliac joint, physical impairments that substantially limit her ability to walk, a major life activity.  42 U.S.C. §§ 12102(1)(A), 12102(2); 28 C.F.R. § 35.108.

95.    Plaintiffs meet the eligibility requirements to participate in Defendant's residential on-street parking services and programs since they live in the Borough.  Therefore, they are qualified persons with disabilities under the ADA.  42 U.S.C. § 12131(2).

96.    Defendant Borough of Conway is a public entity required to comply with Title II of the ADA.  42 U.S.C. § 12131(1)(A).

97.    The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be

22

denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

98.    Defendant's actions and omissions preclude Plaintiffs, by reason of their disabilities, from participating in and receiving the benefits of its on-street parking program, service, and activity in violation of 42 U.S.C. § 12132 and 28 C.F.R. §§ 35.130(a), 35.130(b)(1)(i)-(iii).

99.    Defendant's actions and omissions discriminate against Plaintiffs on the basis of their disabilities by refusing to make and/or continue to make a reasonable modification to its policies, practices, and procedures necessary to avoid discrimination in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(b)(7).

**VI.    Relief Requested**

100.  Plaintiffs respectfully request that the Court:

a.    retain jurisdiction over this action;

b.    declare that the Borough's discriminatory actions violate the ADA;

c.    issue appropriate injunctive relief to enjoin the Borough from violating the ADA and to take appropriate steps to remedy its violations; and

      d.    issue such other relief as may be just, equitable, and appropriate, including an award of reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. § 12205.

Dated:  May 19, 2017      By:   /s/ Andrew Favini
         Andrew Favini (PA ID 316339)
         Disability Rights Pennsylvania
         429 Fourth Avenue, Suite 701
         Pittsburgh, PA  15219-1505
         (412) 391-5225
         (412) 467-8940 (fax)
         afavini@disabilityrightspa.org

         Dynah Haubert (PA ID 313862)
         Shanon Levin (PA ID 86040)
         Disability Rights Pennsylvania
         1315 Walnut Street, Suite 500
         Philadelphia, PA  19107-4705
         (215) 238-8070
         (215) 772-3126 (fax)
         dhaubert@disabilityrightspa.org
         slevin@disabilityrightspa.org

         Counsel for Plaintiffs